In the Matter of LEON G. CRARY, an Attorney.*

Third Department, March 29, 1928.

**Attorney and client — disciplinary proceedings — attorney suspended for one year for unprofessional conduct prejudicial to administration of justice — allowance for expenses denied respondent.**

The respondent, an attorney at law, is suspended for one year for unprofessional conduct detrimental to the administration of justice. The evidence shows that the respondent, as an attorney for a client charged with rape, at least influenced one of the principal witnesses to change her testimony in an endeavor to prevent a conviction of the client.

An application by the respondent for an allowance for expenses is denied.

DISCIPLINARY proceeding instituted by the New York State Bar Association.

*H. W. Main,* for the complainant.

*George J. Moore* and *Lawrence Russell,* for the respondent.

PER CURIAM. Charges of unprofessional conduct have been made, and have been tried, against the respondent. He now moves for confirmation of the referee's report, which recommends dismissal of the charges for failure of proof; and he also asks allowances for expenses. The record brings before us the conduct of respondent in connection with perjury committed by Evelyn Dufresne at the trial of one Robillard, who was tried and convicted of rape in the first degree, committed at the Radio Inn upon a young girl, Ida Bylow, on July 12, 1926. That conviction was affirmed in this court. (*People* v. *Robillard,* 221 App. Div. 811.)

The circumstances of the Robillard crime are, briefly, the following: On July 12, 1926, Evelyn Dufresne, then sixteen years of age, with

* See 221 App. Div. 821.— [REP.

her sister, then fourteen, had been in the afternoon at the Radio Inn with Robillard and one Lizette, both young men. This is a lonesome place where those young men entertained young girls. That afternoon Evelyn "made a date" for that evening at the inn, and she was to bring with her Ida Bylow, then fifteen years of age. Evelyn procured the Bylow girl; Lizette met them at an agreed place and took them to the Radio Inn, where, with Robillard, they spent the evening, no other person being present. The Bylow girl related a series of acts and conduct, which, being corroborated, justified the conviction of Robillard for rape in the first degree. The Bylow girl testified that, after having some drinks which had been prepared there, Robillard and the Bylow girl went out on the porch and then were on the ground, where Robillard forcibly had sexual intercourse with her. Before a justice of the peace, two days later, Evelyn Dufresne corroborated this story, stating that Robillard and Bylow, while at the inn, went out of doors and remained about half an hour. She also stated that Lizette had had sexual intercourse with her. Before the grand jury she told substantially the same story, except that she denied intercourse with Lizette. At the trial of Robillard she testified that Robillard did not go out of doors; that, when the Bylow girl went out, Robillard remained in the doorway. This change in her testimony is the particular ground for the charge of perjury. Her testimony at Robillard's trial, if true, established that he had not committed rape as described by Ida Bylow. The record establishes that Evelyn Dufresne committed perjury at Robillard's trial, and that by this perjured testimony an attempt was made to defeat the conviction of Robillard. Evelyn was indicted for perjury and, when arraigned, she pleaded guilty. A witness will not commit perjury without some inducement. The question here is what, if any, connection had the respondent with inducing this perjury. We must refer to some of the events.

The young sister of Evelyn Dufresne, who had been with her at the Radio Inn, was brought before a justice of the peace charged with disorderly conduct and was sent away to a house of correction at Hudson. Evelyn was arrested for disorderly conduct and very likely denied that she had sexual intercourse with Lizette to avoid being sent away as a disorderly person. The respondent appeared as attorney for Evelyn Dufresne on July fourteenth, two days after the Robillard crime. He was not retained by Evelyn. Respondent claimed that he was retained by an uncle of Evelyn; the uncle, however, denies this, saying that Evelyn told him that Robillard and Lizette wanted him to say that he would pay Crary for his services. Evelyn testifies that she heard Crary remark to her

uncle: "You are the man who hired me; I don't care where I get my money, but you are supposed to hire me." Evelyn says that Robillard and Lizette asked her at the time if she had an attorney. She told them, no. They went out, returned and told her they had employed Crary. Crary says he was retained by phone and cannot say by whom. Crary did appear for her. Robillard and Lizette were arrested and held for the grand jury. Crary appeared for them when they were committed to jail and when their bail was fixed. He says he had examined the records made before the justice of the peace carefully and consulted with Robillard and Lizette. Shortly after this a woman, Legg by name, called upon Evelyn Dufresne and invited her to go on a picnic with Robillard and Lizette. She went. They took her to the office of Attorney Murphy in the village of Potsdam. There an affidavit had been, or was, prepared, in which Evelyn Dufresne stated that Robillard had not gone out of the room when at the Radio Inn July 12, 1926. There is much dispute about the preparation of this affidavit. Evelyn Dufresne says that it was already prepared when she reached the office. Murphy says that he prepared it from statements made by her. But Murphy says that he was not retained by either Robillard or Lizette until the day before their trial in October, several months later, and that he had not known them prior thereto but claims that he kept possession of the affidavit until the time of the trial. The affidavit is not in the record and the Legg woman was not a witness.

Thus it appears that, in October, when Robillard's case was moved for trial, respondent was conversant with the events and proceedings which arose out of the Radio Inn affair. He had read the testimony given by Evelyn and the Bylow girl; knew of the charge against Evelyn's sister and her commitment to the Hudson institution, of the charge against Evelyn, of the Murphy affidavit and its purport and of the arrest of Robillard and Lizette, by whom he was immediately retained. Though he says he was not retained to defend them until September when the grand jury indicted them, there is no doubt that he was their attorney from the time of their arrest and no doubt that they acted from then on under his advice. He says that, after their arrest, they were from time to time in his office, though he made no charge for any advice then given. He was not interested in Evelyn Dufresne and received no pay for his services to her, unless from them.

When Robillard's case was moved for trial respondent appeared and procured an adjournment for two days to permit him to prepare for trial. He procured one Bennett, of doubtful character, to drive him to Massena, where Evelyn Dufresne lived. He went

Third Department, March, 1928.       [Vol. 223

after dark. Robillard and Lizette had preceded him and told Evelyn that he was coming. Evelyn and the Carbino woman, a relative, were outside in the car with the two defendants when respondent came. Then Evelyn and the two defendants went to respondent's car and talked with him. The Carbino woman heard little of his conversation. Then all went into the house, respondent claiming that he wanted to prepare some subpœnaes. There is no doubt but the subject of the conversations outside had been the testimony of Evelyn to be given on the Robillard trial; about this alone the visitors were anxious; undoubtedly inducements were tendered her to change her testimony. Robillard, Lizette and their attorney knew what her testimony had been before the justice, that it was against them, and of course wished to avoid it. There is testimony by Evelyn, her grandmother and the Carbino woman that, after entering the house, Evelyn was promised that, if she would testify to help Robillard and Lizette out, they, Robillard and respondent, would get her sister back from Hudson and would protect her from being sent away; and the witness Bennett, respondent's driver, said that Robillard said to Evelyn in the presence of respondent that they would get her sister out of the reformatory and that respondent would help. Respondent claims that in his entire conversation with Evelyn he made no suggestion that she should tell an untruth; of course not; what lawyer or layman even would? If his purpose was simply to learn the truth, it was hardly necessary for him to have taken this night trip to Massena for an interview with Evelyn. He was seen in Massena as late as eleven o'clock that Monday evening. He did not interview Evelyn alone, but in the presence of his two clients and there cannot be the least doubt why the two clients were there. Is it credible that their attorney did not know their purpose, the cause of their anxious interview?

But the referee has found that the evidence does not sustain the charge that respondent was guilty of subornation of perjury. We hesitate to disregard a finding of an official referee, even though very doubtful of its correctness; but we do not hesitate to conclude that the conduct of the respondent in this case was unprofessional and reprehensible, far below the standards required of members of the bar, who are likewise officers of the court. The entire series of events, of which respondent became and was a part, is portrayed before us and we are convinced that discipline beyond verbal censure is required in this case. The application for an allowance for expenses should be denied and the respondent should be suspended from practice during the period of one year from service upon him of a certified copy of the order to be entered herein;

at the expiration of the year he may resume the practice of the law, unless otherwise ordered.

VAN KIRK, P. J., HINMAN, WHITMYER, HILL and HASBROUCK, JJ., concur.

Application for allowance of expenses to the respondent denied. The respondent, Leon G. Crary, is suspended from practice as attorney and counselor at law of the State of New York for the period of one year from the date of the entry and service of a certified copy of the order to that effect to be entered herein. And the said respondent, Leon G. Crary, is hereby commanded, during said period of one year, to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another, and is hereby forbidden, during said period of one year, to perform any of the following acts for compensation or reward, to wit: (1) To appear as an attorney or counselor at law before any court, judge, justice, board, commission or other public authority; (2) to give to another an opinion as to the law or its application or any advice in relation thereto. The court disapproves of the conclusions of the referee herein, and finds that the respondent, Leon G. Crary, is guilty of professional misconduct, collusion and conduct prejudicial to the administration of justice.